IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| **DAIRYLAND POWER COOPERATIVE** ) | |
| ) | |
| and ) | |
| ) | |
| **MR. SEAN L. CRAIG** ) | |
| ) | |
| Petitioners, ) | |
| v. ) | Miscellaneous No._____ |
| ) | |
| **FEDERAL TRADE COMMISSION** ) | |
| ) | |
| and ) | |
| ) | |
| **PEABODY ENERGY CORPORATION** ) | |
| ) | |
| Respondents. ) | |

**PETITIONERS DAIRYLAND POWER COOPERATIVE
AND MR. SEAN L. CRAIG'S JOINT MOTION TO QUASH SUBPOENA**

Petitioners Dairyland Power Cooperative ("Dairyland") and Mr. Sean L. Craig (collectively "Petitioners") hereby move to quash subpoenas issued to Mr. Craig by the Federal Trade Commission ("FTC") and Peabody Energy Corp. ("Peabody") and, in support, state:

1. This Motion to Quash relates to a lawsuit pending before the United States District Court for the Eastern District of Missouri. *See FTC v. Peabody Energy Corp. and Arch Coal, Inc.*, Civ. Action No. 4:20-CV-00317-SEP (E.D. Mo.).

2. The Missouri litigation involves the FTC's challenge to an effort by Peabody and Arch Coal, Inc. ("Arch"), the two largest coal-mining companies in the United States, to form a joint venture. The FTC is seeking a preliminary injunction from the Eastern District of Missouri

to enjoin Peabody and Arch from consummating the proposed joint venture while a separate administrative proceeding on the merits is pending.

3. Neither Dairyland, nor Mr. Craig, is a party to the Missouri litigation or FTC administrative proceeding. (Declaration of Mr. Sean L. Craig in Support of Petitioners' Joint Motion to Quash Subpoena, ¶ 5) (hereinafter, "Craig Decl.").

4. Dairyland is a rural generation and transmission electric cooperative that provides wholesale electrical requirements and other services for 24 member electric service distribution cooperatives and 17 municipal utilities in the Upper Midwest. (*Id.*, ¶¶ 1-2). In turn, these cooperatives and municipals deliver the electricity to consumers, meeting the energy needs of more than a half-million people. (*Id.*, ¶ 2). To supply the necessary electric power to its members, Dairyland owns and operates two major coal-fired generation stations in Wisconsin, owns a partial ownership interest in a third, and obtains other, gas-fired, hydroelectric and renewable energy sourced power supply resources. (*Id.*, ¶ 3).

5. Mr. Craig is Manager, Purchasing & Fuels at Dairyland. (*Id.*, ¶ 1). As Manager of Purchasing & Fuels, Mr. Craig is responsible for overseeing the procurement and transportation of Dairyland's fuel supply for its coal-fired generation stations. (*Id.*, ¶ 3). Mr. Craig also oversees the Purchasing Department, which is responsible for procurement and supply chain of services and materials to support a multitude of departments (*i.e.* Transmission Distribution/Power Delivery, Safety, Building Facilities, Generation, Engineering, IT, Human Resources, etc.). (*Id.*). Mr. Craig's function is of critical importance to Dairyland in the current COVID-19 circumstances, as reliable fuel supply, transportation and purchasing are essential to ensuring Dairyland's continued ability to provide reliable electric service for the members and municipalities it serves. (*Id.*, ¶ 4). Further, Mr. Craig and his staff recently have spent a

considerable amount of time focusing on safety products due to COVID-19, as well as their daily tasks, which has been a challenge for them while working from home.  (*Id.*, ¶ 3).

6. On March 24, 2020, counsel for Peabody issued a subpoena duces tecum ("Peabody SDT") from the United States District Court for the Eastern District of Missouri to Dairyland seeking production of substantial documents and records relating to Dairyland's operations and coal supply arrangements, with a return date for the documents of April 3, 2020. (Craig Decl., Ex. 1).  Service on Dairyland was accomplished through its registered agent. (Craig Decl., ¶ 6).

7. On March 25, 2020, Dairyland received a subpoena duces tecum from the FTC ("FTC SDT") that also sought extensive production of a wide-range of documents from Dairyland, with a return date of April 8, 2020.  (Craig Decl., Ex. 2).  Counsel agreed to accept service of the FTC SDT on behalf of Dairyland, while reserving all other objections.  (Craig Decl., ¶ 7).

8. Peabody also served a deposition subpoena, issued on March 25, 2020 from the United States District Court for the Eastern District of Missouri, seeking the deposition of Mr. Craig and commanding his appearance for a deposition in La Crosse, Wisconsin on April 17, 2020, unless otherwise agreed ("Peabody Deposition Subpoena").  (Craig Decl., Ex. 3).  Counsel agreed to accept service on behalf of Mr. Craig on April 2, 2020, while reserving all other objections.  (Craig Decl., ¶ 8).

9. The FTC subsequently issued a separate deposition subpoena from the same court to Mr. Craig, dated April 6, 2020 ("FTC Deposition Subpoena").  (Craig Decl., Ex. 4).  Like the Peabody Deposition Subpoena, the FTC Deposition Subpoena commanded Mr. Craig to appear for a deposition in La Crosse, Wisconsin on April 17, 2020, unless otherwise agreed.  Counsel

agreed to accept service on behalf of Mr. Craig, while reserving all other objections. (Craig Decl., ¶ 9).

10. On March 30, 2020, Dairyland counsel wrote to Peabody and the FTC, noting that their third-party discovery requests to Dairyland were unduly burdensome and raised substantial concerns. *See* Letters dated March 30, 2020, copies attached hereto as **Exhibits A and B**. First, Dairyland noted the particular burden raised by these third-party requests, given the fact that Dairyland, as well as all other businesses in the State of Wisconsin, was subject to Emergency Order #12, "Safer At Home Order," which was issued by the State of Wisconsin Department of Public Health and has recently been extended pursuant to Emergency Order #28. (*Id*. at 1-2).

11. Under these orders currently in force to May 26, 2020, except to the extent necessary to provide services to operate Essential Businesses or Essential Infrastructure (which the latter specifically included electric utilities that generate and distribute electric power, like Dairyland), all persons are to remain at home and to avoid public or private meetings unless in accordance with social distancing rules. (Craig Decl., ¶ 10). Pursuant to the Orders, Dairyland has implemented its own emergency Business Continuity Plan to limit employee exposure to COVID-19 and ensure that it has personnel available to maintain operations of critical infrastructure, which includes two large coal-fired generation plants and other generation facilities. (*Id*., ¶ 11). The Business Continuity Plan requires more than 240 management and administrative employees to work from home, remotely, without physical access to headquarters, offices, or paper documents. (*Id*., ¶ 12). Most of Dairyland's facilities are now being managed remotely, which has been a demanding undertaking made under very short notice to Dairyland's information technology department. (*Id*., ¶¶ 12, 17). Mr. Craig and his office staff (*i.e.*, one additional Fuels employee and three additional Purchasing employees) have been working

exclusively remotely since before Dairyland or Mr. Craig received the subpoenas from Peabody and the FTC in this case. (*Id.*, ¶ 12). These mandates and the need to literally supply electric power to Dairyland's members have limited and continue to severely limit Dairyland's and Mr. Craig's time and ability to be available to retrieve and review documents and to appear for a deposition. (*Id.*, ¶ 17).

11. Second, Dairyland noted that the return dates of both SDTs were particularly onerous under the current circumstances caused by the COVID-19 pandemic, and that even absent Emergency Order #12, Dairyland would not be able to complete document production of the magnitude requested by the return dates specified. In particular, Dairyland emphasized that "Dairyland's primary focus for the next month – at least – will be to continue to provide electric service to the communities they serve." (Ex. A at 2; Ex. B at 2).

12. Finally, Dairyland noted that the burden of the discovery requests to Dairyland were disproportionate to the marginal relevance, given that Peabody and the FTC had already subpoenaed over twenty (20) other third-parties in connection with the Missouri lawsuit. (*Id.*)

13. Counsel for Dairyland and Mr. Craig subsequently conferred with Peabody and the FTC on April 1 and April 7, 2020 to discuss Dairyland's concerns about the burden of producing documents and making one of its key employees available for deposition during the pendency of Emergency Order #12. During those conferences, Peabody and the FTC agreed:

 (a) to extend the date for the filing of written responses and objections to the SDTs to April 15, 2020;

 (b) that Dairyland would commence its production of a limited and defined subset of document categories to Peabody and the FTC on or about April 15, with production to be substantially complete by April 24, 2020;

 (c) Dairyland need only produce "non-privileged, high-level, responsive documents that are readily retrievable";

      (d)    that Mr. Craig's April 17 deposition was deferred, and that the parties would consult after Dairyland's document production was completed to discuss whether a deposition would be necessary; and

      (e)    that Dairyland and Mr. Craig had reserved all rights to object and/or move to quash the deposition subpoenas if Peabody and the FTC did not agree to waive, or limit, the deposition by April 30, 2020.

*See* Letter dated April 7, 2020, copy attached hereto as **Exhibit C**.

14. Consistent with the April 7 agreements, Dairyland completed its production of the documents it agreed to produce on April 24, 2020. (Craig Decl., ¶ 14).

15. Counsel for Dairyland and Mr. Craig have conferred with counsel for Peabody and the FTC about the need for Mr. Craig's deposition, and Peabody and the FTC were unwilling to forego the deposition. (*Id.*, ¶ 15). On April 30, 2020, counsel for both Peabody and the FTC notified counsel for Dairyland and Mr. Craig that they would not be withdrawing the Deposition Subpoenas. *See* Emails dated April 30, 2020, copy attached hereto as **Exhibit D**. While Peabody stated it was willing to limit Mr. Craig's deposition from three-and-a-half hours[1] to two hours, provided that the FTC agreed to do the same, counsel for Peabody also stated that regardless of whether the FTC agreed to limit the deposition, Peabody counsel "believe [they] could cover the topics [they would] like to discuss with [Mr. Craig] using less time." (*Id.* at 1-2). Counsel for the FTC stated it was willing to withdraw the Deposition Subpoena, or limit the length of the deposition, if Peabody agreed to remove Mr. Craig from its witness list and agreed not to call Mr. Craig to testify in the underlying Missouri Litigation. (*Id.* at 1).

---

[1] The Case Management Order governing the Missouri Litigation specifies that the parties are allowed 7 hours for depositions, and that the time for such depositions shall be split 3.5 hours for the FTC and 3.5 hours for Peabody/Arch, unless the deponent meets certain defined characteristics that are not applicable to Mr. Craig.

16. This Court should quash the Peabody and FTC deposition subpoenas because: (1) Mr. Craig's attendance at any deposition would cause him to take time away from his critical functions necessary to assist Dairyland in providing essential infrastructure services during the pendency of Emergency Orders #12 and #28; (2) they subject non-parties Dairyland and Mr. Craig to undue burden and request duplicative testimony of information that is contained in the substantial documents Dairyland has already produced in response to Peabody and the FTC's SDTs; and (3) the subpoenas subject Dairyland and Mr. Craig to undue burden because the request to depose Mr. Craig seeks duplicative testimony that Peabody and the FTC are seeking through the "more than 20" third-party subpoenas that Peabody and the FTC have issued to other utility companies.

17. Federal Rule of Civil Procedure 45(d)(1) states that a party issuing a subpoena "must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena," and that the "court for the district where compliance is required must enforce this duty and impose an appropriate sanction – which may include lost earnings and reasonable attorney's fees – on a party or attorney who fails to comply."

18. The Peabody and FTC Deposition Subpoenas should be quashed because they subject Mr. Craig, and Dairyland, to undue burden and are unreasonable in that they would require Mr. Craig to divert his efforts away from providing essential services in assuring that the fuel supply, transportation and purchasing that Dairyland needs to continue to operate its two largest power plants are not compromised while the Emergency Orders remain in effect.

19. Further, the Peabody and FTC Deposition Subpoenas should be quashed because Dairyland has produced all of the documents that it agreed to produce pursuant to the April 7, 2020 letter, and the additional burden that Dairyland and Mr. Craig would experience if his

deposition is required outweighs the potential relevance that this third-party deposition has to the Missouri Litigation.

20. A brief in support is filed herewith and is incorporated herein by reference.

21. If the Court denies the Motion to Quash and/or orders Mr. Craig to appear for a deposition, Dairyland and Mr. Craig request that the Court recognize Mr. Craig's importance to Dairyland's essential functions in providing electrical services to its members and municipalities, and not order Mr. Craig to appear at a deposition during the pendency of the Wisconsin "Safer At Home" Emergency Orders.

WHEREFORE, Dairyland and Mr. Craig pray that the Court enter an order granting the Motion to Quash Mr. Craig's deposition subpoena, and for all other appropriate relief, including attorneys' fees.

Respectfully submitted,

DATED: May 1, 2020

   */s/ Andrew J. Parrish*
Andrew J. Parrish
Attorney At Law
Wheeler, Van Sickle & Anderson, S.C.
44 East Mifflin Street, Suite 1000,
Madison, WI 53703
Telephone: (608) 255-7277
Mobile: (608) 234-2569
aparrish@wheelerlaw.com

Frank J. Pergolizzi (D.C. Bar No. 405174)
Andrew B. Kolesar III (D.C. Bar No. 435137)
A. Rebecca Williams (D.C. Bar No. 1044155)
SLOVER & LOFTUS LLP
1224 Seventeenth St., N.W.
Washington, D.C. 20036
Telephone: (202) 347-7170
Mobile: (202) 674-7170
fjp@sloverandloftus.com
abk@sloverandloftus.com
arw@sloverandloftus.com

*Attorneys for Dairyland Power Cooperative
And Mr. Sean L. Craig*

## CERTIFICATE OF SERVICE

I hereby certify that on the 1st day of May 2020, I served the above filing *via* electronic mail and U.S. Mail upon:

>Peabody Energy Corporation
>Edward D. Hassi, Esq.
>Tristan M. Ellis, Esq.
>Debevoise & Plimpton LLP
>801 Pennsylvania Avenue, N.W., Suite 500
>Washington, D.C.  20004
>thassi@debevoise.com
>tmellis@debevoise.com
>
>Federal Trade Commission
>Daniel Matheson, Esq.
>Amy Dobrzynski, Esq.
>Taylor Alexander, Esq.
>400 Seventh Street, S.W.
>Washington, D.C.  20024
>dmatheson@ftc.gov
>adobrzynski@ftc.gov
>talexander@ftc.gov

        */s/ Frank J. Pergolizzi*
        Frank J. Pergolizzi

        *An Attorney for Dairyland Power Cooperative*
        *And Mr. Sean L. Craig*